UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re**: Motion to Dismiss; Motion to Strike; Request for Judicial Notice [Dkt. Nos. 26, 27, 34]

This matter is before us on Defendant City of Los Angeles's Motion to Dismiss, Motion to Strike, and Request for Judicial Notice. We have considered the papers filed in support of and in opposition to these Motions, and deem these matters appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts of this case, we repeat them only as necessary. Accordingly, we rule as follows.

**I.     Background**

On April 27, 2012 Plaintiffs Crimson Pipeline Management, Inc.; Crimson California Pipeline LP; and Crimson Pipeline LP (collectively, "Crimson" or "Plaintiffs"), filed this Oil Pollution Act ("OPA") suit against four Defendants: Herzog Contracting Corp. ("Herzog"), the City of Los Angeles ("LA"), the City of Long Beach ("Long Beach"), and Alameda Corridor Transportation Authority ("ACTA").

Crimson owns a crude oil pipeline in Wilmington, CA known as the Youngstown Lateral (the "Lateral"). Herzog is a contractor that LA hired to construct the ACTA drainage system near the Lateral in 1995. This suit arises from a 2010 oil leak in the Lateral that contaminated the Dominguez Channel, a waterway near Long Beach.

Plaintiffs allege that Herzog is liable under a variety of theories because it caused the leak by puncturing the Lateral's pipeline casing with heavy equipment in 1995, when it constructed the nearby ACTA drainage system. Plaintiffs allege that LA is vicariously liable because it hired Herzog to do the work that caused the puncture. Plaintiffs assert the following claims against Herzog and LA: (1) "cost recovery" under OPA § 2702; (2) subrogation under OPA §§ 2702 and 2715; (3) contribution under OPA § 2709; (4) negligence; and (5) equitable indemnity. Plaintiffs further assert an action for declaratory relief against all Defendants. LA has filed the instant Motion to Dismiss all claims against it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

## II. Motion to Dismiss

### A. *Legal Standard*

To survive a motion to dismiss for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the Court must accept the allegations of the Complaint as true and construe them in the light most favorable to Plaintiff in resolving this Motion, the Court need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

LA requests that we take judicial notice of (1) a LA Environmental Enforcement Unit Criminal Complaint against Crimson ("Criminal Complaint"); (2) a LA Civil Complaint against Crimson ("Civil Complaint"); and (3) a Stipulated Judgment between LA and Crimson ("Stipulated Judgment") arising from the Civil Complaint. [Dkt. No. 26-1].

Review under Rule 12(b)(6) is generally limited to the contents of the complaint, but we may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Matters of public records are generally proper subjects of judicial notice. *See, e.g.*, *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010). A stipulated judgment in a state court action is a judicially noticeable matter of public record. *See Bosnich v. Chase Bank USA, N.A.*, 2011 WL 1790106, at *1 n.1 (C.D. Cal. 2011).

The Parties spill much ink in their papers about the propriety of judicial notice here, but they appear to agree that we may notice that the Criminal and Civil Complaints have been filed without taking the substance of these documents as true. (RJN Reply at 2 [Dkt. No. 47]; RJN Opp'n ¶¶ 1-2 [Dkt. No. 41]). Rather, at the motion to dismiss stage, we take the allegations of Crimson's Complaint as true. As for the Stipulated Judgment, we may notice the fact that it has been filed in state court, but not its substance. *See Bosnich*, 2011 WL 1790106, at *1 n.1. Even if we were to notice the substance of the Stipulated Judgment, it contains a disclaimer that Crimson admits no liability. [Dkt. No. 26-1, Ex. C, 91:6-12]. Thus, we **GRANT** LA's Request for Judicial Notice of the Criminal and Civil Complaints and the Stipulated Judgment, but we do not take notice of the truth of the substantive assertions in these documents. Accordingly, these documents have no bearing on whether Crimson has failed to state any of its claims. At best, the Complaints and the Stipulated Judgment provide background information that might not otherwise be apparent from Crimson's Complaint. The lengthy dispute about judicial notice in the papers appears to have been much ado about nothing.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

B.  **Discussion**

  1.  **Vicarious Liability & Negligence Claim**

Crimson alleges that LA is vicariously liable for the alleged damage Herzog caused to the Lateral during a 1995 construction project. (Compl. ¶ 21-25). LA contends that Crimson has failed to sufficiently allege a basis for vicarious liability, and all of Crimson's claims against LA should accordingly be dismissed.

As an initial matter, Crimson argues that the usual pleading standards should be relaxed because the facts about LA's relationship with Herzog during the 1995 project are "peculiarly within [Herzog and LA's] knowledge." But the relaxed pleading standard doctrine applies as an exception to Rule 9(b)'s heightened standard for fraud- and mistake-based claims. Here, these heightened pleading standards do not apply in the first place. And we cannot reduce pleading standards below the basic requirement to plausibly state a claim under *Twombly* and *Iqbal*. *Facebook, Inc. v. MaxBounty, Inc.*, 2011 WL 4346514, at *3 (N.D. Cal. 2011) ("Even under a more relaxed standard, a plaintiff 'must still set forth the factual basis for his belief,' and mere speculation and conclusory allegations are insufficient to state a claim."). Thus, we apply ordinary pleading standards to Crimson's vicarious liability claim.

"Generally, an 'employer' (i.e., hirer) of an independent contractor is not liable for the negligence of the contractor or its employees." *American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 28 (Ct. App. 2009). "Following common law tradition, California decisions . . . uniformly declare that '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" *Bowman v. Wyatt*, 186 Cal. App. 4th 286, 301 (Ct. App. 2010) (citation omitted). "The label placed by the parties on their relationship is not dispositive." *Narayan v. EGL, Inc.*, 616 F.3d 895, 903 (9th Cir. 2010) (quotation marks and citation omitted).

California law also looks to a number of other factors to distinguish between employees and independent contractors. Two such factors include: "[1] whether the one performing services is engaged in a distinct occupation or business; . . . [2] whether or not the parties believe they are creating the relationship of employer-employee." *Arzate v. Bridge Terminal Transport, Inc.*, 192 Cal. App. 4th 419, 426 (Ct. App. 2011). These factors "'cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.'" *Id.* Thus, an employment relationship is generally a question of fact. *See Seneris v. Haas*, 45 Cal. 2d 811, 831 (1955) ("Unless the evidence is susceptible of but a single inference, the question of agency is one of fact for the jury.").

There are many exceptions to the rule that a hirer is not liable for an independent contractor. *American States Ins. Co.*, 180 Cal. App. 4th at 28. The pertinent exception here is the peculiar risk doctrine: "One who employs an independent contractor to do work which the employer should

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

recognize as likely to create . . . a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for . . . the failure of the contractor to exercise reasonable care to take such precautions." *Bowman v. Wyatt*, 186 Cal. App. 4th 286, 306 (Ct. App. 2010) (quoting Restatement (Second) Torts § 416); *see also Privette v. Superior Court*, 5 Cal. 4th 689, 691 (1993) ("Under the peculiar risk doctrine, a person who hires an independent contractor to perform work that is inherently dangerous can be held liable for tort damages when the contractor's negligent performance of the work causes injuries to others.").

Crimson has sufficiently pled facts to support vicarious liability under the peculiar risk doctrine. A critical issue in peculiar risk doctrine is "whether the work for which the contractor was hired involves a risk that is 'peculiar to the work to be done,' arising either from the nature or the location of the work and 'against which a reasonable person would recognize the necessity of taking special precautions.'" *Id.* (quoting *Privette v. Superior Court*, 5 Cal. 4th 689, 695 (1993)). Here, Crimson alleges that LA hired Herzog to do heavy construction near an oil pipeline. (Compl. ¶¶ 21-25).

There are numerous cases about the "peculiar risks" of construction equipment, none of which the Parties cite in their papers. *See Bowman v. Wyatt*, 186 Cal. App. 4th 286, 306-09 (Ct. App. 2010); *American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18 (Ct. App. 2009). In *Castro*, for instance, "[t]here was substantial evidence that the state should have recognized that the risk of someone being struck by dump trucks backing up for more than half a block was inherent in the approved plan of operation unless special precautions were taken." *Castro v. California*, 114 Cal. App. 3d 503, 513 (Ct. App. 1981). *Castro* therefore reversed a trial court's post-verdict judgment for defendants because there was sufficient evidence to support the jury's finding of peculiar risk. *Id.* at 507-09. In a highly fact-sensitive analysis, *Castro* looked to the surrounding circumstances of the construction project, such as the distance the trucks backed up, the noise at the construction site, and the visibility from the trucks' rear-view mirrors, to find sufficient facts to support vicarious liability under the peculiar risk doctrine. *Id.* at 511-13 ("Whether the particular work which the independent contractor has been hired to perform is likely to create a peculiar risk of harm to others unless special precautions are taken is ordinarily a question of fact.")

Here, it is at least plausible based on the allegations in the Complaint that LA should have recognized the need for special precautions during heavy construction near an oil pipeline. Crimson does not use the word "peculiar risk" in its Complaint, but construing the pleadings liberally, the allegations that LA hired Herzog to construct the ACTA drainage system with heavy equipment near the Lateral are sufficient. Thus, LA's argument that the entire Complaint should be dismissed because Crimson has failed to plausibly allege vicarious liability is incorrect.

LA relies on *Privette v. Superior Court*, 5 Cal. 4th 689, 693 (1993), to argue that the peculiar risk doctrine applies only when a contractor engages in an "inherently dangerous" activity, a situation LA claims is not present here. *Privette* and other cases make clear, however, that "inherent danger" is just a synonym for "peculiar risk;" it is not a limitation on the doctrine. *See, e.g.*, *Castro*, 114 Cal. App. 3d at 511 (listing varied "examples" of cases falling within the peculiar risk doctrine). As discussed

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

above, California courts analyze a variety of fact-sensitive circumstances to assess whether construction equipment poses a peculiar risk; there is no finite list of "inherently dangerous" activities that qualify for the peculiar risk doctrine. *Privette* itself endorsed a fact-sensitive test for peculiar risk that takes into account the "nature or the location of the work." 5 Cal. 4th at 696. There is no authority to support the view that the court must make a threshold determination that an activity is inherently dangerous as an abstract matter. Rather, "the applicability of the peculiar risk doctrine is a question of fact." *United States v. Sierra Pacific Industries*, __ F. Supp. 2d ____, 2012 WL 2116539, at *5 (E.D. Cal. 2012).

Finally, LA appears to contend that Crimson must allege facts about LA's own misconduct to state a claim for vicarious liability. We reject this argument. In *Iqbal*, the plaintiff was required to plausibly plead the defendants' own misconduct because vicarious liability does not apply in *Bivens* or § 1983 actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, however, vicarious liability applies because this is an OPA and tort action. Thus, Crimson need not plead LA's misconduct. See Restatement (Second) Torts, Introductory Note, Rest. 2d Torts 2, 15, 2 In. Nt. ("rules of vicarious liability [make] the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault."). Rather, Crimson need only plausibly plead (1) a basis for vicarious liability; and (2) misconduct on the part of Herzog. Crimson has done so here: it has pled a claim for vicarious liability under the peculiar risk doctrine, and it has pled that Herzog negligently harmed the Lateral during the ACTA drainage system construction project. (Compl. ¶¶ 21-25, 44-48).

Accordingly, as LA's sole argument to dismiss Crimson's negligence claim is that LA cannot be vicariously liable for Herzog, LA's Motion to Dismiss the negligence claim is **DENIED**.

### 2.    Oil Pollution Act Claims

#### a.    Statutory Context & Elements of OPA Claim

Under the OPA, "anyone owning or operating a pipeline is held strictly liable for any removal costs and damages caused by a discharge of oil from that pipeline." *Unocal Corp. v. U.S.*, 222 F.3d 528, 534 (9th Cir. 2000); 33 U.S.C. § 2702(a). The OPA achieves this result by holding "each responsible party for . . . a facility from which oil is discharged . . . liable for removal costs and damages." 33 U.S.C. § 2702(a). Certain oil related entities are per se "responsible parties" under 33 U.S.C. § 2701 (32). Such per se responsible parties include "any person owning or operating a pipeline." *Id.* Thus, Crimson, as the entity that owned and operated the Lateral when it leaked, is a "responsible party" under the OPA.

In general, "responsible parties" under the OPA do not include third parties because they are not within the statutory definition of § 2701(32). However, a per se responsible party, such as an oil pipeline, can sue a third party to establish that it "solely caused" the oil spill and therefore "shall be treated as a responsible party." § 2702(d)(1)(A). A vandal who blows up a pipeline, for instance,

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

would become "the responsible party" under § 2702(d)(1)(A) and would be liable under the OPA accordingly. § 2702(a).

Section § 2701(d)(1)(A) sets out the standard to hold a third party liable under the OPA as the sole cause of an oil spill. *Seaboats, Inc. v. Posavina Shipping Co.*, 2003 WL 203078, at *7-8 (D. Mass. 2003) (Section 2702(d)(1)(A) sets the sole cause standard of liability). This Section requires a responsible party to establish that the spill was "caused solely by an act or omission of one or more third parties described in § 2703(a)(3)." Section § 2703(a)(3), in turn, sets out the elements of the third party defense. Here, however, these are the elements of an affirmative claim for relief rather than a defense.

The elements of the third party defense are:

(1) The discharge and resulting damages or removal costs were solely caused by an act or omission of a third party (other than a third party in a contractual relationship with the responsible party);

(2) The responsible party exercised due care with respect to the oil concerned; and

(3) The responsible party took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions.

See 33 U.S.C. § 2703(a) & (a)(3); *Unocal Corp.*, 222 F.3d at 534. Thus, to plead that Herzog and LA are liable as responsible parties because they are the sole cause of the spill, Crimson must plausibly allege all three of these elements.

The third party defense "does not apply" when the responsible party "fails or refuses to:"

(1) report the incident as required by law if the responsible party knows or has reason to know of the incident;

(2) provide all reasonable cooperation and assistance requested by certain officials; or

(3) without good cause, comply with an order issued under the Federal Water Pollution Control Act.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

33 U.S.C. § 2703(c). We conclude that § 2703(c)'s limitations on the third party defense are not elements of a claim against an allegedly responsible third party. Rather, § 2703(c) is best read as an affirmative defense to such a claim.

The touchstone for determining the burden of proof under a statutory cause of action (and thus the elements that must be pled) is the text of the statute itself. *Schaffer v. Weast*, 546 U.S. 49, 56 (2005). When a statute is silent as to who bears the burden of proof, we resort to "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id.*

This ordinary default rule is subject to many exceptions, including that "certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions." *Id.*; *see also* Sutherland Statutes and Statutory Construction § 38:23 ("[W]here a statute is pleaded for affirmative relief, a proviso or exception need not be pleaded by the plaintiff, as it is a matter of defense."); *cf. United States v. Peters*, 349 F.3d 842 (5th Cir. 2003) ("It is a 'well-established rule of criminal statutory construction that an exception set forth in a distinct clause or provision should be construed as an affirmative defense and not as an essential element of the crime.'"). "[A]n affirmative defense, under the meaning of Fed. R. Civ. Proc. 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *E. & J. Gallo Winery v. Encana Energy Services, Inc.*, 2008 WL 2489887, *5 (E.D. Cal. 2008) (citation omitted).

Here, § 2703(c) is best read as a distinct clause that sets forth an affirmative defense rather than elements of an OPA claim for subrogation or contribution against a third party. First, § 2702(d)(1)(A) provides that "third parties described in section 2703(a)" shall be treated as the responsible party under the OPA when they solely cause a discharge. As discussed above, § 2703(a) and (a)(3) in turn set forth three elements to hold third parties liable: (1) the third parties solely caused the incident; (2) the responsible party exercised due care; (3) and the responsible party took precautions. Section 2703(c) states that § 2703(a) "does not apply" when a responsible party fails or refuses to report, cooperate, or comply. Congress could have included § 2703(c)'s provisions as part of 2703(a)'s elements for the third party defense. But instead, Congress created a distinct subsection that uses the language of exception: § 2703(a) *"does not apply"* if any of § 2703(c)'s provisions are met.

Further, § 2703(c)'s provisions do not merely negate the elements of § 2703(a). A third party may have solely caused a spill and a responsible party may have exercised due care and taken precautions (§ 2703(a)) even though the responsible party failed to report the incident, provide reasonable cooperation, or comply with an order without sufficient cause (§ 2703(c)). True, a responsible party's failure to meet § 2703(c)'s provisions may tend to negate due care under § 2703(a), but due care does not necessarily require meeting any or all of § 2703(c)'s provisions. Rather, the OPA provides that due care shall be considered "in light of all relevant circumstances." Certain exceptions under § 2703(c) may defeat a claim, even if "all relevant circumstances" indicate due care.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

This interpretation is consistent with the Ninth Circuit's analysis of § 2703: "Once the responsible party has establish these three [§2703(a)] factors, the third party who caused the spill officially becomes a 'responsible party,' and the owner/operator no longer bears any liability for the spill." *Unocal Corp.*, 222 F.3d at 534-35. *Unocal* does not refer to § 2703(c) as elements of a claim. Thus, Crimson may state a claim by plausibly alleging § 2703(a)'s elements. Crimson need not also plead § 2703(c).

As for remedies under the OPA, a party who successfully establishes that a third party is solely responsible must still pay removal costs and damages to any claimants. § 2702(d)(1)(B)(i). But the prevailing party is entitled to subrogation of all rights to recover removal costs and damages from the third party. § 2702(d)(1)(B)(ii); *see also Seaboats, Inc. v. Posavina Shipping Co.*, 2003 WL 203078, at *7-8 (D. Mass. 2003) (Section 2702(d)(1)(A) sets the sole cause standard of liability while § 2702(d)(1)(B) provides subrogation as "the practical mechanics" for liability. These sections are integrated; they are not separate grounds for relief.).

Thus, the statutory scheme works by holding entities directly involved in the oil industry (all per se "responsible parties") strictly liable for oil spills. Per se responsible parties, such as a pipeline, can then shift liability to third parties who solely cause a spill under § 2702(d)(1)(A). Shifting liability to a third party gives the per se responsible party subrogation rights to all claims of the U.S. Government or other claimants against the third party.

The OPA also creates two additional bases for relief independent of § 2702(d)(1). First, § 2715 creates a separate basis for subrogation. 33 U.S.C. § 2715 ("Any person . . . who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law."). Second, § 2709 creates an action for contribution. 33 U.S.C. § 2709 ("A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law."). These claims differ from § 2702(d)(1) mainly because they do not require a plaintiff to assert that a third party solely caused the spill. Otherwise, both §§ 2702(d)(1) and 2715 provide for subrogation. Other differences between these sections do not appear relevant here. *See, e.g., Seaboats*, 2003 WL 203078, at *6 n.5 (discussing that OPA limitations on liability may apply differently to the various bases for subrogation under the OPA).

    b.  **Subrogation and Contribution Claims**

      i.  **Subrogation under § 2702(d)(1)**

Crimson argues that it can "obtain direct damages" from LA and Herzog under OPA § 2702(d)(1). (Opp. Mot. Dismiss at 12); (Compl. ¶ 31-35). This is not correct, however; OPA § 2702(d)(1) provides for subrogation. *Seaboats*, 2003 WL 203078, at *7-8 (Section 2702(d)(1)(A) sets the sole cause standard of liability while § 2702(d)(1)(B) provides subrogation as "the practical

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

mechanics" for liability.) "Direct damages" do not appear available under the statute. Thus, we will treat Crimson's claim for relief under § 2702(d)(1) as a claim for subrogation.

To state a claim for subrogation under § 2702(d)(1)(B), Crimson must plead that Herzog and LA are the "responsible parties" that solely caused the spill under § 2702(d)(1)(A). Section 2702(d)(1)(A) in turn requires Crimson to plead § 2703(a)'s requirements for the third party defense, which here are the elements of an affirmative claim for relief. Crimson has sufficiently alleged all three § 2703(a) elements. First, Crimson has successfully alleged that the spill was "caused solely by an act or omission of a third party" or parties. 33 U.S.C. § 2703(a). According to the Complaint, Herzog damaged the casing of the Lateral with heavy equipment; Herzog continued construction without notifying the entity that owned the Lateral before Crimson; the ACTA drainage system concealed the damage to the casing; water entered the casing because of the damage Herzog did to it; eventually this water corroded the pipeline and caused the oil to leak out; and the ACTA drainage system was constructed in a way that allowed the leaking oil to flow into the Dominguez Channel. (Compl. ¶ 13, 21-24). Further, as discussed above, Crimson has plausibly alleged that LA is vicariously liable under the "peculiar risk" doctrine. Thus, Crimson has pled that LA and Herzog are solely responsible third parties.

Second, Crimson must plausibly allege that it exercised due care both "prior to the spill and during its containment," *Unocal*, 222 F.3d at 536, "with respect to the oil concerned, taking into consideration the characteristics of the oil and in light of all relevant facts and circumstances," § 2703(a)(3)(A).

Crimson argues that its allegations in paragraph 13 of the Complaint plausibly show that it exercised due care prior to the spill:

> In October 2010, Tesoro [Refinery] observed that approximately a gallon of crude oil had escaped from the casing vent on the east side of the Youngstown lateral. Crimson cleaned up the crude oil and immediately shutdown the Youngstown lateral. Crimson's investigation of the release disclosed a leak in the Youngstown lateral pipeline. Crimson's investigations did not reveal damage to the pipeline casing, which was intended to contain a release from the crude oil pipeline.

Crimson "immediately" responded to a one gallon leak on the east side of the Lateral by shutting it down. This allegation is enough to plead due care prior to the spill because, taken as true, it shows Crimson was responding quickly to leaks in the Lateral, the pipeline at issue in this case, just a few months before the spill in question.

Next, Crimson has alleged just enough about its post-spill clean-up efforts to plausibly allege due care. The Complaint states that the EPA and Crimson have made and continue to make "significant expenditures to investigate the scope of the contamination and to remove crude oil from impacted

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

areas." (Compl. 26, 27). This allegation is enough to plead post-spill due care. Section 2703(a)(3)(A) requires that due care be assessed "in light of all relevant facts and circumstances." Crimson's alleged remediation investigation and expenditures are "relevant facts" which, taken as true, are enough to plausibly allege due care.

LA argues that to plead due care, Crimson must allege that it properly reported the spill. This argument is meritless. "All relevant facts and circumstances" inform due care under § 2703(a)(3)(A). Whether a pipeline reports a spill is just one relevant "fact or circumstance;" it is not a necessary fact that must be alleged to even state a claim. *See Unocal*, 222 F.3d at 536-39 (assessing the following factors to find sufficient evidence to support jury's conclusion that a pipeline exercised due care: (1) foreseeability of possible rupture; (2) information pipeline employees gathered when they arrived at the spill site; (3) assessment and inspection of the spill site; (4) consideration of maps after the spill; (5) reporting to agencies.). A pipeline's failure to report may defeat a claim under § 2703(c), but as discussed above in Part II.B.2.a, § 2703(c) does not create elements of an OPA claim that a third party is liable as the sole cause of an incident; rather § 2703(c) creates an affirmative defense to such an OPA claim.

Finally, Crimson has plausibly alleged that § 2703(a)(3)(B) does not apply. This section requires Crimson to plead that it "took precautions against" Herzog and LA's foreseeable acts and the foreseeable consequences of those acts. Here, however, Crimson has pled that the damage Herzog did to the Lateral was not foreseeable: "Herzog and [LA] continued construction of the ACTA drainage system without notifying the prior owner of the Youngstown lateral, repairing the damage[,] or taking any action. The damage was ultimately concealed by the completed drainage system." (Compl. ¶ 23). Further, the construction occurred near the Lateral before Crimson owned it, so there are no precautions Crimson could have been expected to take at the time the Herzog allegedly punctured the pipeline casing.

LA's other arguments to dismiss Crimson's claim for subrogation under § 2702(d)(1) are without merit. LA argues that Crimson has failed to sufficiently plead that it paid any OPA claims because Crimson specifically alleges that it is "exposed to claims for reimbursement from the EPA in an amount in excess of $1,000,000." (Compl. ¶ 27). While LA is correct that pleading "exposure" is insufficient to plead "payment," here, Crimson has pled that it "paid removal costs to the EPA." (Compl. ¶ 39). Further, this allegation immediately follows Crimson's assertion that OPA § 2715 provides subrogation to "any person who pays compensation pursuant to OPA to any claimant." (Compl. ¶ 38). Putting these allegations together and construing the Complaint liberally, Crimson has clearly alleged that it paid compensation to the EPA pursuant to the OPA. Crimson's other allegation that it is "exposed" to liability is neither inconsistent with nor more specific than its allegations about payment. Accordingly, Crimson has sufficiently alleged payment.

Accordingly, Crimson has successfully pled that Herzog and LA are the responsible party under § 2702(d)(1)(A) and that, for the claims it has paid, Crimson is entitled to subrogate to all rights that the

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

U.S. Government and other paid claimants have against Herzog and LA. § 2702(d)(1)(B). LA's Motion to Dismiss Crimson's claim for subrogation under § 2702(d)(1) is **DENIED**.

### ii. Subrogation under § 2715

Crimson has also stated a claim for subrogation under § 2715. Under § 2715, "[a]ny person . . . who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715. Here, as discussed above, Crimson has sufficiently alleged that it has paid compensation to the EPA. Therefore, Crimson has pled a claim to subrogate to all of the EPA's claims against Herzog and LA based on their responsibility for the spill.

In light of the foregoing, LA's Motion to Dismiss Crimson's claim for subrogation under § 2715 is **DENIED**.

### iii. Contribution under § 2709

OPA § 2709 allows a person to "bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law." As discussed above, Crimson has sufficiently alleged that LA is liable under the OPA as a third party who solely caused the incident. Crimson has thus sufficiently alleged that LA is "liable or potentially liable" under the OPA to state a claim for contribution. LA's Motion to Dismiss the contribution claim is **DENIED**.

## III. Equitable Indemnity & Declaratory Relief

LA contends that Crimson's claims for equitable indemnity and declaratory judgment must be dismissed because there are no viable claims alleged against LA. (Mot. Dismiss MPA at 14-15). As discussed above, however, Crimson has stated a valid claim that LA is vicariously liable for Herzog's negligence under the peculiar risk doctrine. Crimson has also stated OPA claims against LA. Accordingly, LA's Motion to Dismiss the equitable indemnity and declaratory relief claims is **DENIED**.

## IV. Motion to Strike

LA moves to strike Crimson's request for attorney's fees and remediation and removal costs. Motions to strike are "generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). A federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. *Ollier v. Sweetwater Union High Sch.*, 735 F. Supp. 2d 1222, 1223 (S.D. Cal. 2010). Rule 12(f) "does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 971 (2010). Accordingly, we decline to consider LA's argument,

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3653-GHK (RZx) | Date | October 10, 2012 |
|---|---|---|---|
| Title | *Crimson Pipeline Management, Inc., et al. v. Herzog Contracting Corporation, et al.* | | |

which at best will only result in striking specific forms of relief (i.e., attorney's fees and damages for remediation and removal costs) on a piece-meal basis. LA's Motion to Strike is **DENIED**.

**V.     Conclusion**

In light of the forgoing, LA's Motion to Dismiss is **DENIED**. LA's Motion to Strike is likewise **DENIED**. LA's Request for Judicial Notice is **GRANTED**. LA **SHALL** answer the Complaint **within fourteen (14) days** hereof.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
|  | Initials of Deputy Clerk | | Bea |